G6U5heS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          15 Cr. 730 (WHP)

HONG PING HE and BENSON CHIN,

               Defendants.

------------------------------x

                                    New York, N.Y.
                                    June 30, 2016
                                    2:55 p.m.


Before:

               HON. WILLIAM H. PAULEY III,

                                    District Judge


                    APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JESSICA FENDER
     Assistant United States Attorney

DONALD YANNELLA, P.C.
     Attorneys for Defendant Chin
BY:  DONALD YANNELLA

FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorneys for Defendant He
BY:  MARTIN S. COHEN

ALSO PRESENT:   PATSY ONG, Mandarin interpreter
                LILY LAU, Cantonese interpreter

G6U5heS                              sentence

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Appearances for the government.

 3              MS. FENDER:  Good afternoon, your Honor.  Jessica

 4    Fender on behalf of the government, and with me at counsel's

 5    table is one of our interns, Richard Frolichstein.

 6              THE COURT:  Good afternoon, Ms. Fender.

 7              MR. COHEN:  Good afternoon, your Honor.  Martin Cohen

 8    from the Federal Defenders on behalf of Ms. He.

 9              THE COURT:  Good afternoon to you, Mr. Cohen.

10              MR. YANNELLA:  And good afternoon.  Donald Yannella on

11    behalf of Benson Chin.

12              THE COURT:  Good afternoon, Mr. Yannella.

13              I note the presence of both Cantonese and Mandarin

14    interpreters.  Would each of you identify yourselves?

15              INTERPRETER LAU:  Yes.  Lily Lau, Cantonese

16    interpreter.

17              THE COURT:  Good afternoon, Ms. Lau.

18              INTERPRETER LAU:  Good afternoon, Judge.

19              INTERPRETER ONG:  Patsy Ong, Mandarin interpreter.

20              THE COURT:  Good afternoon to you, Ms. Ong.

21              INTERPRETER ONG:  Good afternoon.

22              THE COURT:  Ms. He, are you able to understand what is

23    being said here today through the Mandarin interpreter?  The

24    interpreter cannot take a shake of the head.

25              DEFENDANT HE:  I understand.
```

G6U5heS                          sentence

1           THE COURT:  And Mr. Chin, can you understand what is

2     being said here today through the Cantonese interpreter?

3           DEFENDANT CHIN:  I understand.

4           THE COURT:  All right.  This matter is on for

5     sentencing.  Are the parties ready to proceed?

6           MS. FENDER:  The government is, your Honor.

7           MR. COHEN:  Yes, your Honor, Ms. He is prepared.

8           MR. YANNELLA:  Yes, your Honor.

9           THE COURT:  All right.  Mr. Cohen, have you reviewed

10    with your client the presentence investigation report?

11          MR. COHEN:  Yes, your Honor.  I reviewed the report

12    with the aid of an interpreter with Ms. He.  We have no

13    objections to the facts set forth in the report other than as

14    indicated in our sentencing submission.

15          THE COURT:  Does the government believe there are any

16    factual matters in the report that warrant modification or

17    correction?

18          MS. FENDER:  No, your Honor.  As Mr. Cohen

19    represented, the only debate we are having here is about the

20    allegations being made by Victim 1.

21          THE COURT:  Is it necessary for us to address those

22    allegations in terms of the presentence report?

23          MS. FENDER:  I don't believe so, your Honor, because

24    no enhancement is being sought here and it does not affect the

25    guidelines calculation, only to the extent it affects your

G6U5heS                              sentence

1    Honor's consideration in issuing a sentence.

2              THE COURT:  Mr. Cohen, do you have any view?

3              MR. COHEN:  I agree, your Honor.

4              Our request is as we set forth in the report that the

5    Court direct probation to include Ms. He's denial of the

6    assertions but, other than that, no other changes.

7              THE COURT:  All right.  Thank you.

8              MR. COHEN:  Thank you, your Honor.

9              THE COURT:  I will include such a direction.

10             MR. COHEN:  Thank you very much, your Honor.

11             THE COURT:  So, the report will be amended to reflect

12   that, that the defendant denies the allegations.

13             MR. COHEN:  Thank you very much, your Honor.

14             THE COURT:  Mr.Yannella, have you reviewed with your

15   client the presentence investigation report.

16             MR. YANNELLA:  Yes, I have.

17             THE COURT:  Are there any factual matters set forth in

18   the report that you believe warrant modification or correction?

19             MR. YANNELLA:  I sent in my objections and probation

20   noted them.

21             THE COURT:  They did.

22             MR. YANNELLA:  Yes, so I am satisfied with the fact

23   that they have noted my objections.  That is our assertion of

24   what occurred.  I'm not seeking a Fatico hearing and I am

25   satisfied with the report.

G6U5heS                                sentence

1           THE COURT:  I have one issue with respect to the

2    report and that is at paragraph 112.

3           Mr. Chin has been married a number of times and the

4    report reports that the first marriage was to Mei Rong Weng in

5    1999; they divorced in 2003.  The second marriage was to Lee

6    Lee Yung in 2001 in Manhattan; they divorced in 2008.  The

7    third marriage was to Caliman Yu in 2009; they divorced in

8    2012.

9           My question, specifically, is did the defendant marry

10   Ms. Yung while he was still married to Ms. Weng?

11           (Defendant and counsel conferring)

12           MR. YANNELLA:  Judge, my client's answer is no, that

13   he has never been married to two women at once.  There has

14   never been any overlap, but he also points out to me that the

15   order of wives numbers 2 and 3 is switched in the presentence

16   report but there was no overlap at any time.

17           THE COURT:  When did he marry Ms. Yung?

18           (Defendant and counsel conferring)

19           MR. YANNELLA:  Judge, he doesn't remember the exact

20   years but, again, he is telling me that 2 and 3 are switched in

21   the PSR in paragraph 112.

22           THE COURT:  The names are switched?

23           MR. YANNELLA:  Yes.

24           THE COURT:  So wife no. 3 is really wife no. 2?

25           MR. YANNELLA:  Correct.

G6U5heS                          sentence

1          THE COURT:  That still doesn't address the years.

2     There is still a two-year overlap.

3          MR. YANNELLA:  Oh, I see, your Honor.

4          THE COURT:  That's my point.

5          MR. YANNELLA:  I see.  I see, between 1 and 2.

6          (Defendant and counsel conferring)

7          MR. YANNELLA:  Okay.  Your Honor, he doesn't know how

8     much time elapsed but he is sure he had a divorce certificate

9     from the end of his first marriage before he entered into his

10    second marriage.  I know that doesn't answer your question

11    precisely but he simply can't give me the years but he is

12    telling me he was never married to two women at the same time.

13    He actually had a child as a result of that first marriage with

14    that first wife.

15          THE COURT:  Well, but that's contrary to paragraph 131

16    in which he reported to probation that he does not have any

17    children.  Does he have a child?

18          (Defendant and counsel conferring)

19          MR. YANNELLA:  Okay.  The woman told -- his first wife

20    said that it was his child but that after he got divorced he

21    found out it was not his child.

22          THE COURT:  All right.  He just makes it up as he goes

23    along.

24          Now, it is not particularly relevant to sentencing but

25    just looking at this, maybe the government should look at how

G6U5heS                         sentence

1   many green cards the defendant might be involved with, so many

2   marriages.

3           MS. FENDER:  Your Honor, we understand that Mr. Chin's

4   relationship history is somewhat convoluted.  Frankly, we tried

5   to get to the bottom of it as well and have been unable to do

6   so.

7           THE COURT:  Well, it wouldn't be too difficult

8   assuming that he gave the proper names for his wives to find

9   out how many of them got green cards or subsequently became

10  citizens because they married him, but that's really not before

11  the Court at this time.

12          I think before I hear from counsel I will simply

13  review for all sides and both defendants the guidelines

14  computation of which it appears there is no dispute.

15          Both of the defendants stand convicted of transporting

16  others in interstate commerce for the purposes of engaging in

17  prostitution, a serious crime against the United States.  The

18  base offense level for this crime is 14.  The parties agree

19  that no role adjustments are appropriate, but given that the

20  investigation revealed that the offense involved between 10 and

21  12 victims, a grouping analysis was employed leading to a

22  five-level increase in the total offense level.  There were six

23  units and under the multiple count adjustment that yields a

24  five-level increase.  And so, the combined adjusted offense

25  level is 19.

G6U5heS                    sentence

1          Now, each of these defendants pled guilty before me

2     back in January.  At that time I found that their pleas were

3     knowing and voluntary and, accordingly, I grant each of them a

4     three-level reduction for acceptance of responsibility, so

5     their total offense level is 16.  Neither of them have any

6     prior criminal history although each does have an arrest.

7          Accordingly, their Criminal History Category is a I

8     and under the guideline tables that yields a guideline range

9     for each of them of 21 to 27 months of imprisonment.

10          So, that guideline calculation applies to each of

11     them.  With that, I am prepared to hear from each party

12     regarding the 3553(a) factors and their respective submissions

13     on behalf of their clients.

14          Mr. Cohen, would you like to be heard?

15          MR. COHEN:  Yes.  Thank you very much.

16          As the Court has already pointed out, this is a very

17     serious offense and nothing in my submission or in my comments

18     to the Court today suggest that it is not, or that Ms. He

19     doesn't recognize the seriousness of the offense for which she

20     is doing everything she can to accept responsibility for.

21          At the same time, the Court should take into account

22     Ms. He's background and her characteristics.  There is a whole

23     person here which is distinct from this serious offense.  We

24     have tried to lay it out as best as we can in our sentencing

25     submission.  I note the Court has read it.  It is hard to do.

G6U5heS                        sentence

It is hard to capture a person who has had the type of life
that Ms. He has had and there are a few things I want to
highlight for the Court.

          Ms. He is now 46 years old.  She has had a very, very
difficult life.  She grew up, as we tried to describe, in a
type of poverty that is hard to comprehend.  She lived in a
house sharing her room with her siblings, with ducks, with
chickens, with no running water, with no electricity, on the
outskirts of Chongqing, in China.

          She was working from the time she was -- as early as
she can remember but as best she can recall 4 or 5 years old,
on the family farm helping to take care of her siblings.  And
the theme throughout her life and including in connection with
this offense is that she was trying her best to support others,
specifically eventually her son, her aged parents.  She was not
able to get much education because of her work
responsibilities.

          We described for the Court about how when she was 19
she went to work in a restaurant, she met her first husband who
was an alcoholic who physically abused her for years, abused
their son.  Their son has written to the Court and described
that to some extent.

          Eventually during this period she resorted to
prostitution.  There is no -- I mean, it is a tricky area
because here she is both prostitute and someone who engaged

G6U5heS                          sentence

other women to engage in prostitution, but it is a sad

commentary on the state of the world that women in Ms. He's

position would end up doing that because it was the only way

she could find to make enough money to support her family.  It

doesn't excuse her engaging other people to do it but it's part

of a very complicated life that the Court has to consider.

Her life did not get easier.  Her second husband had a

gambling problem, eventually took -- relied on Ms. He to

prostitute herself in order to support him and her son, and

then when she sent all of the money home that she had made, he

stole it all and gambled it away and got into further debt and

that led her to come to the U.S., to continue to try and make

money as a prostitute, which money she sent home to support her

kids and her aging parents.

She is now 46 years old.  Our expectation is that she

will be removed from the country.  She is not here legally.

She will have to go back, regardless of what happens today, to

China, and start again trying to help her parents out as best

as she can.  They're both, from their letters, about 70 years

old and quite ill and have been, as her parents and her brother

indicate, relying upon her for financial support.  And given

the fact that since she was 5 years old she has tried to

support those around her, I am absolutely confident that that

is what she will do when she gets home, will be to try and

support her parents.

1        We provided some other information in our submission

2   that the Court can consider.  The Court can note that the

3   grouping calculation and the increase of guidelines for the

4   number of people involved is based, in part, on what Ms. He

5   told the government about her own activities in her attempts to

6   take responsibility and to make amends for her conduct.

7        So, it would be, I think, a different question,

8   perhaps -- well, let me put it this way, your Honor.  The Court

9   can note that Ms. He is likely to be removed from this country.

10   That, in and of itself, is going to be a very difficult

11   experience.

12        THE COURT:  Do you know whether an immigration

13   detainer has been lodged against her?

14        MR. COHEN:  I have no reason to think that one has

15   been lodged against her as of this moment, but as Ms. He told

16   the -- you know, the Court can take her very forthright

17   statements to the probation office.  She told the probation

18   officer that she came here on a tourist visa and worked as a

19   prostitute when she arrived and did not try and obfuscate that

20   or hide that in any way.  From the start our expectation is

21   that it will have very severe, adverse consequences for her and

22   Ms. He is here to take -- she has done everything she can,

23   given the nature of this offense, to accept her responsibility

24   and that is part of it and part of it is her being honest with

25   the government and the probation office about her own

G6U5heS                              sentence

1   immigration situation.

2            So, given the part of her difficult life, the fact

3   that she will be removed, the fact that her aging parents rely

4   on her, the fact that she has worked very hard thinking about

5   other people, the fact that that work involved prostitution is

6   difficult -- or at times, obviously not throughout her life.

7   Again, it doesn't take away that she engaged other people to do

8   it with understanding what was involved and it is a crime for

9   which she is standing before the Court, but we urge the Court

10  to take, in balancing all these different factors that in this

11  case to recognize that Ms. He does not need to be further

12  punished.  She does not need to be further deterred.

13           The Court can note that Ms. He has been out on release

14  for over a year, been fully compliant of all of the terms of

15  her release, has done nothing wrong during this period, and I

16  am confident will do nothing wrong again.  This has been an

17  absolutely searing experience for someone who has never been in

18  this position before.

19           So, on balance, I urge the Court not to impose an

20  incarceratory sentence on Ms. He.

21           Thank you, your Honor.

22           THE COURT:  Thank you, Mr. Cohen.

23           Mr. Yannella, do you wish to be heard on behalf of

24  your client?

25           MR. YANNELLA:  Yes, your Honor.

G6U5heS                          sentence

With respect to the paragraph 112 of the PSR, I was present when my client was interviewed and I know the dates suggest there is overlaps in the marriage but I do believe that's a typo.  And the reason I say that is that when he was interviewed by the probation department, they went through the years and I recall them understanding that none of the marriages overlapped.  We didn't notice how it was written in the PSR but if he had said it that way or if he had changed his answers when he was trying to remember the different marriages, the probation officer would have brought it to his attention right there in front of him and it never was.

Again, we didn't notice it in the PSR.  So, I don't think there is any question, I don't think there is any possibility that he was married to two women at the same time, ever.

And, Judge, I have discussed the 3553(a) factors pretty extensively in my sentencing memorandum so I am not going to do that entirely again but I would point out that my client is 47 years old.  He now appreciates how wrong prostitution is and how it's viewed in the United States, although I will say toward the beginning of the case because he is from a place -- Macao -- where prostitution is legal, he had a different mindset even though he knew it was illegal here, he had a different mindset on it earlier in the case.

He and Ms. He have been married for three years.  They

1    have a very strong relationship.  And I think that reflects --

2    I don't know what my client thinks about or thought about

3    previously about prostitution, he didn't view it with as much

4    social stigma.  In fact, one of his former wives was also a

5    prostitute and she wrote that that in one of the sentencing

6    letters submitted on his behalf.

7            But, he understands the seriousness of the offense and

8    he does now have a felony conviction.  His life is up-ended

9    because the person he loves and the person he lives with is

10   likely to be deported and he may end up having to go with her

11   in order to continue that relationship.  He might have to leave

12   the United States.  It is a wrenching decision for him,

13   especially because he has parents in their 90s but he does

14   accept responsibility for his actions and I would request that

15   if your Honor does not grant what I ask for which is probation,

16   that there be some variance from the guidelines.

17           Thank you.

18           THE COURT:  Thank you, Mr. Yannella.

19           Does the government wish to be heard, Ms. Fender?

20           MS. FENDER:  Just very briefly, your Honor.

21           Your Honor, even putting aside the serious allegations

22   from Victim 1, this case is about very serious conduct.  This

23   argument that is being made that for instance Mr. Chin didn't

24   understand that prostitution was illegal in this country is

25   belied by, as your Honor noted before, the earlier arrest that

G6U5heS                          sentence

1    Mr. Chin has.  So, even putting aside the allegations made by

2    some of the victims in this case it is very serious conduct.

3           These women who are coming over here from China are

4    seeking a better life and opportunity and, instead, they're

5    being exploited.  Some, like Victim 1, are exploited to the

6    extent that it fundamentally alters the course of their lives.

7           We have heard about, with all due respect to Ms. He

8    and Mr. Chin's family but, as your Honor is aware based on the

9    stenting submission that Victim 1 put in in this case, she

10   herself as a family.  She says:  I was a homemaker in China but

11   I cannot square being a mother or wife with having been forced

12   to have sex with strangers.  I feel like I have to keep secrets

13   from my family now because I am deeply ashamed of what happened

14   and do not thinking anyone would understand.  I cannot help but

15   feel like I am no longer a woman or a whole person.

16          Although we are not seeking a special enhancement

17   based on the allegations, we do think they can be considered by

18   your Honor.

19          So, for the reasons stated in our submission, we do

20   think a guideline sentence is appropriate for the defendants.

21          THE COURT:  Does the government believe that any order

22   of restitution is appropriate here?

23          MS. FENDER:  Yes, we do, your Honor.

24          We have been discussing that with the victim and her

25   advocates trying to make sure they understand what is sort of

G6U5heS                       sentence

1    acceptable given her desire to avoid any future proceedings.

2    She does not wish to appear before the Court.  She very much

3    wishes to put this behind her.

4           I have spoken with Mr. Yannella and Mr. Cohen.  I

5    think we are reaching a resolution on that issue and so we

6    would ask your Honor's leave to put in something after today,

7    but we are seeking an order of restitution.

8           THE COURT:  Why can't the parties reach an agreement

9    now?

10          MS. FENDER:  Certainly, your Honor.  I am happy to

11   explain the disagreement.

12          Specifically, as your Honor saw in defense's

13   sentencing submissions, they object to the characterization of

14   the victim that this $2,000 that was given over for

15   safe-keeping was taken.  So, I believe, and I don't want to

16   speak out of turn -- but that Mr. Chin and Ms. He understand

17   and accept the idea of restitution for the conduct to which

18   they expressly pled guilty, namely the approximately $7,500 in

19   the money earned by the victim and things of that nature.  It

20   is the $2,000 that is the issue.  The victim still believes

21   that she is entitled to that.  She has alleged and we believe,

22   for reasons stated in our submission, that she did give the

23   $2,000 for safe-keeping.  The defendants object and disagree.

24   And so, that's the outstanding issue.

25          If your Honor feels he does want to address that issue

G6U5heS                        sentence

today, I do have a draft order of restitution that leaves the

amount blank so that we could enter that today, your Honor, if

you would like.  And it does set out in the schedule:  Filed

under seal.  It does have the victim's name and address that I

believe is appropriate for an order of restitution.

          THE COURT:  What are the defendants' views?

          MR. YANNELLA:  May we consult with the prosecutor?

          THE COURT:  Yes.

          MR. YANNELLA:  Thank you.

          (Counsel conferring)

          MR. COHEN:  Your Honor, let me lay out for you our

position and our discussions with the government in terms of

restitution.

          As the Court knows, Victim 1 put in a request for

restitution in the amount of $9,520.  The bulk of that

restitution, which is about $7,000, is based on the money that

was earned by her during that time and which she says that our

clients held on to.  There is an additional $2,000 which she

alleges was taken from her at the beginning.  For the reasons

that we have already discussed in connection with the

presentence report, both Ms. He and Mr. Chin deny the

assertions generally made by the victim about how she was

treated by them.  At the same time, they recognize that this

was a traumatic experience for her.  They do not want to

prolong it or add to it in any way and consented to the

G6U5heS                         sentence

1    restitution payments for the figure in the $7,500 range which

2    encompassed the money that she earned, but even wanting to not

3    add to this did not -- we couldn't agree to the $2,000 and

4    savings which they assert they did not take.

5              So, that's what we represented to the government and

6    that is where things stand.

7              So, if the Court finds that the $9,500 is appropriate,

8    that's going to be fine with Ms. He, but our position is that

9    the -- I guess the exact amount is going to be $7,520 is the

10   appropriate amount with the understanding that the agreement to

11   pay restitution doesn't change their position on the conduct.

12             Thank you, your Honor.

13             THE COURT:  Thank you, Mr. Cohen.

14             Do you endorse Mr. Cohen's view, Mr. Yannella?

15             MR. YANNELLA:  Yes.

16             THE COURT:  Do the parties waive any evidentiary

17   hearing with respect to restitution?

18             MR. COHEN:  Yes, your Honor.

19             MR. YANNELLA:  Yes.

20             THE COURT:  The Court has, as part of the submissions

21   here, a victim impact statement and an affidavit of loss filed

22   by victim no. 1.  Based upon that affidavit of loss, this Court

23   finds that an award of restitution, jointly and severally in

24   the amount of $9,520, is appropriate.

25             MR. COHEN:  Thank you, your Honor.

G6U5heS                        sentence

```
 1          THE COURT:  Now, Mr. Cohen, does your client wish to

 2   address the Court before sentence is imposed?

 3          MR. COHEN:  Yes, your Honor.

 4          (Defendant and counsel conferring)

 5          DEFENDANT HE:  I'm sorry, your Honor.  I am extremely

 6   remorseful and I will not do such a thing ever in the future.

 7   I am very remorseful.

 8          MR. COHEN:  Thank you, your Honor.

 9          DEFENDANT CHIN:  (In English)  Thank you.

10          THE COURT:  Mr. Yannella, does your client wish to

11   address the Court before sentence is imposed?

12          MR. YANNELLA:  Yes, your Honor.

13          THE COURT:  I will hear from him now.

14          DEFENDANT CHIN:  Your Honor, I know that what I did

15   was wrong but I never wanted to and I never thought I would

16   hurt anyone.  I actually wanted to engage in a legitimate

17   business and not an illegal business, but because of my health

18   reasons there are a lot of things that I cannot do, and also my

19   family needed my support and that's why I started this illegal

20   business when I did not have any other choices.

21          If I have an opportunity, I will never engage in this

22   illegal business again.  I am sorry.

23          THE COURT:  All right.

24          Each of these defendants come before the Court having

25   been convicted of transporting others in interstate commerce
```

G6U5heS                         sentence

for the purposes of engaging in prostitution; as I have said, a
very serious crime against the United States.  The guideline
range, as I have previously noted, is 21 to 27 months of
imprisonment.

Turning first to Ms. He and considering the 3553(a)
factors.  First, as the parties' submissions and Mr. Cohen's
remarks today make clear, the defendant was born and spent her
early years in an impoverished rural community in China
suffering the kind of poverty that no one in the United States,
in 2016, is suffering.  She, as reported, slept in a room with
her siblings, with chickens and ducks in the room, no plumbing,
no electricity, and as soon as she could walk was put in the
fields to help the family.

She ultimately moved to a larger place, a more
urbanized place in China where she began to engage in
prostitution.  She wound up coming to the United States for the
express purpose of engaging in prostitution and she came here,
of course, under false pretenses on a visitor's visa.

The crime here, committed with her husband, was
heinous.  The whole situation really points to a parallel
universe that hits hard to grapple with the fact that this kind
of conduct is going on with people shuffling humanity from
Flushing to various motels in New Jersey, preying on the
Chinese community and preying on young women who have come to
the United States for any number of reasons, I am sure, but

G6U5heS                       sentence

certainly not with the view like Ms. He, of engaging in

prostitution.  And victim no. 1's statement really says so much

about this case.

        So, when the co-defendant, Mr. Chin, said he never

intended to hurt anyone, it just rings hollow given the conduct

of these defendants in this scheme transporting women for sex

over state lines.

        It is clear, though, that unlike Mr. Chin, Ms. He does

not enjoy the privileges and immunities of citizenship in the

United States and she should be deported from the United States

upon the completion of any term of imprisonment here.

        It strikes me that the severity of the conduct, the

sustained nature of the conduct, warrant significant punishment

and not just as a matter of general deterrence but also

specific deterrence.  This defendant, Ms. He, engaged just as

actively and willingly in this enterprise, in essence, of

transporting young women across state lines for prostitution.

        And so, in bringing all of those factors together and

looking at her as an individual recognizing the circumstance

that she's in, recognizing the fact that she herself engaged in

prostitution does not excuse her conduct in this case but,

certainly, at least to this Court, is some indication of the

desperateness in which she found herself when she came to the

United States.

        I am prepared to impose sentence on her at this time

and I think that a non-guideline sentence is appropriate in

Ms. He's case given the collateral consequences that she is

going to suffer.

So, Ms. He, I would ask that you stand.

Ms. He, this conduct is inexcusable and you have

certainly hurt some people very, very seriously, something that

they'll have to live with for the rest of their lives.  For

that you must be punished and a big part of your punishment

will be removing you from the United States because you don't

deserve to be here.

It is my judgment that you be sentenced to a term of

seven months of imprisonment.  I am going to impose a term of

five years of supervised release but I am going to include, in

my recommendation, that on the face of the judgment, that a

detainer be lodged against you and that you be deported from

the United States.

I am going to impose all the standard conditions of

supervised release and the following special conditions:  That

you comply with any and all directives of immigration

authorities; that you not have contact with any of the victims

in this case whether physical, visual, written, telephonic, any

electronic, any communication with any of them, nor shall you

cause or encourage anyone else to have any contact with them;

then you are to submit your person, residence, place of

business, vehicle, or any other premises under your control to

G6U5heS                          sentence

1   a search on the basis that your probation officer has a

2   reasonable belief that contraband or other evidence of a

3   violation of the conditions of your release may be found.  That

4   search can be conducted at a reasonable time and in a

5   reasonable manner and your failure to submit to such a search

6   may be grounds for revocation.

7           So, you are to inform any other residents of the

8   premises where you reside that those premises may be subject to

9   search pursuant to this condition.

10          I am not going to impose any fine but I am going to

11  impose an order of restitution in the amount of $9,520, jointly

12  and severally with your co-defendant, Mr. Chin.  I am also

13  going to impose the mandatory $100 special assessment and I

14  will enter an order of restitution in the case.

15          This constitutes the sentence of this Court.  I advise

16  you that to the extent that you have not previously waived your

17  right to appeal, you have the right to appeal.  I advise you

18  further that if you cannot afford counsel, counsel will be

19  provided to you free of cost.

20          Mr. Cohen has done an excellent job in representing

21  you and I am confident that he will advise you further

22  regarding your appellate rights.  You may be seated.

23          Turning to Mr. Chin.

24          Unlike his wife and co-defendant, Mr. Chin, you came

25  to the United States legally and you partook of all the

G6U5heS                      sentence

benefits that the United States has to offer.  You got a free

public education in Forest Hills.  We conferred citizenship on

you back more than 20 years ago and you've abused the trust

that your government put in you.

     We welcomed you.  We can't turn back the hands of time

but if we could, we'd keep you out but we're stuck with you

because you're a citizen.  The conduct that you engaged in is

despicable.  And, as the government noted, it's not the first

time that you've been involved with prostitution.  Eight years

ago you were arrested and you certainly knew before that that

it was illegal.

     These women, Victim no. 1 in particular, will bear the

scars of what you did and your wife did to her for the rest of

her life.  I have no doubt about that.  No recompense can be

made for that. the restitution is just a drop in the bucket.

     Looking at you, considering there are -- I'm sad to

say -- very few redeeming qualities about you.  You committed a

serious offense, you did it with impunity.  You've gambled.

You've got all kinds of problems that have led to the collapse

of businesses that you had because of your gambling.  You have

got a long parade of illnesses that you have, quite frankly

none of which are so overwhelming.  There is many people your

age who could claim the same kinds of health problems that you

went to great lengths to describe.

     You have gone from job to job intermittently doing

G6U5heS                              sentence

 1   various things; working as a desk clerk at hotels.  I wonder

 2   what opportunities those gave you to meet young women that you

 3   could involve in prostitution.

 4            You deserve to be punished.

 5            It is my judgment, Mr. Chin, that you be sentenced to

 6   a term of 21 months of imprisonment.  I think a guideline

 7   sentence is appropriate for you because, unlike your wife, we

 8   can't get rid of you so you need to be out of circulation.  I'm

 9   also going to impose on you a five-year term of supervised

10   release subject to all of the standard conditions of supervised

11   release and the following special conditions that you, sir,

12   submit yourself and your premise, your residence and any

13   premises under your control, to a search on the basis that your

14   probation officer has a reasonable belief that contraband or

15   evidence of a violation of the conditions of your release can

16   be found, that search which can include your vehicle or place

17   of business can be conducted at a reasonable time and in a

18   reasonable manner, and your failure to submit to such a search

19   may be grounds for revocation.  You are to inform any other

20   residents that the premises where you reside upon your release

21   may be subject to search pursuant to this condition.  And, you

22   are directed to report to the nearest probation office within

23   72 hours of your release and to be supervised in the district

24   of your residence.

25            I am also imposing on you, joint and several with your

G6U5heS                          sentence

1    co-defendant, an order of restitution in the amount of $9,520.

2    And incidentally, this restitution will be payable in monthly

3    installments of 15 percent of your gross monthly income upon

4    your release from prison.

5          I am not imposing any fine on you.  I am imposing the

6    mandatory $100 special assessment.

7          Further, I am imposing the special condition as I did

8    with Ms. He that you have no contact with the victims in this

9    case, whether it be physical, visual, written, telephonic,

10   electronic, smoke signals.  No contact with any of these

11   victims.  And you won't send anyone to directly cause or

12   encourage anyone else to have contact with the victims.

13   They're all finished with you.

14         This constitutes the sentence of this Court.  I advise

15   you, sir, that to the extent you have not previously waived

16   your right to appeal, you have the right to appeal.

17         I advise you further if you cannot afford counsel,

18   counsel will be provided to you free of cost.

19         Mr. Yannella has done the very best he can for you.

20   You didn't give him much to work with.  It has really all been

21   a waste.  Maybe you will do something productive when you are

22   finally released from prison.  If you go back to your old ways

23   you will be back before me in this courtroom and I will not

24   hesitate to revoke your supervised release and send you back to

25   prison.

G6U5heS                          sentence

1            Do you understand, sir?

2            DEFENDANT CHIN:  I understand.

3            THE COURT:  All right.  You may be seated.

4            Are there any further applications?

5            MS. FENDER:  Yes, your Honor.  The government would

6    move to dismiss the underlying counts, Count One and Count

7    Three of the information, against these defendants.

8            THE COURT:  The government's application is granted.

9            Are there any further applications?

10           MS. FENDER:  The only other thing, your Honor, is if

11   we could have some small measure of time to get you a draft

12   order of restitution?  Given the specifications today with

13   regard to the monthly installment plan I would like to include

14   that in the proposed order.

15           THE COURT:  I don't know that that needs to be in the

16   order.  It will be in the judgment of conviction as a condition

17   of supervised release as a special condition so I think you can

18   just hand up the order.

19           MR. YANNELLA:  Judge, may we consult with the

20   prosecutor?

21           THE COURT:  Yes.  By all means.

22           (Counsel conferring)

23           MS. FENDER:  Your Honor, may I have just one moment?

24           THE COURT:  You may.

25           (Pause)

G6U5heS                            sentence

1          MS. FENDER:  Your Honor, may I approach?

2          THE COURT:  You may.

3          MS. FENDER:  I am handing up a draft order of

4   restitution.  We would ask your Honor that the schedule of

5   victims on the last page be filed under seal.

6          THE COURT:  That application is granted.

7          MS. FENDER:  Thank you, your Honor.

8          THE COURT:  Any further applications from the

9   defendants.

10          MR. COHEN:  Nothing for Ms. He.  Thank you, your

11   Honor.

12          MR. YANNELLA:  No, your Honor.

13          THE COURT:  All right.  And any requests with respect

14   to the location for confinement?

15          MR. COHEN:  Your Honor, I would request that the Court

16   recommend a facility as close to New York as possible.  My

17   expectation is that I think that the only women's prison or

18   low-end security prison is in West Virginia so that's my

19   expectation in terms of where she would go.

20          Thank you, your Honor.

21          THE COURT:  I will include your recommendation on the

22   face of the judgment.

23          Mr. Yannella?

24          MR. YANNELLA:  There is a federal facility in Fort

25   Dix, New Jersey, and my client respectfully requests that.  He

G6U5heS                          sentence

1    does have family members who will want to visit him.

2              THE COURT:  That involves security classifications

3    which I leave to the Bureau of Prisons but I will include a

4    recommendation that he be housed at a facility as close to the

5    New York metropolitan area as possible.

6              MR. YANNELLA:  That's fine, your Honor.  I know New

7    Jersey does have multiple classifications but what your Honor

8    said is fine.

9              THE COURT:  All right.  And finally, just so that the

10   Court's interest with respect to the finality of this matter be

11   resolved, I am directing the government to ensure that a

12   detainer is lodged by immigration against Ms. He.

13             Anything else?

14             MS. FENDER:  Your Honor, may I have just one more

15   moment?  I apologize.

16             THE COURT:  Yes.

17             (Counsel conferring)

18             MS. FENDER:  Your Honor, with respect to restitution,

19   I neglected to mention earlier that Mr. Chin had posted some

20   amount of cash as security for his bond and we would ask, based

21   on my earlier affirmations in this case, it looks like it is

22   about $1,400.  We ask that that be applied toward restitution

23   instead of being released to the defendant or his family.

24             MR. YANNELLA:  No objection.

25             THE COURT:  All right.  After his surrender.

G6U5heS                          sentence

1            MR. YANNELLA:  Yes.

2            THE COURT:  All right?  I assume that both defendants

3    are requesting voluntary surrender?

4            MR. COHEN:  That's correct, your Honor.

5            As the Court would note, Ms. He has been out for a

6    year.  Probation has recommended voluntary surrender so we

7    would request a date about six weeks out, your Honor.

8            THE COURT:  Is there any objection by the government?

9            MS. FENDER:  No objection, your Honor.

10           MR. YANNELLA:  We take the same position, your Honor.

11   My client has also had no issues with retrial services.

12           THE COURT:  All right.  I am going to direct that each

13   of the defendants surrender to a facility to be designated by

14   the Bureau of Prisons by Thursday, August 18th.

15           Anything further?

16           MR. COHEN:  Nothing for Ms. He.

17           MR. YANNELLA:  No.

18           MS. FENDER:  No, your Honor.  Thank you.

19           THE COURT:  This matter is concluded.  Have a good

20   afternoon.

21                              o0o

22

23

24

25